918 So.2d 163 (2005)
Jack Dempsey FERRELL, Appellant,
v.
STATE of Florida, Appellee.
Jack Dempsey Ferrell, Petitioner,
v.
James V. Crosby, Jr., etc., Respondent.
Nos. SC02-1498, SC03-218.
Supreme Court of Florida.
June 16, 2005.
As Revised on Denial of Rehearing December 22, 2005.
*166 Bill Jennings, Capital Collateral Regional Counsel  Middle, Carol C. Rodriguez and Robert T. Strain, Assistant CCR Counsels, Tampa, FL, for Appellant/Petitioner.
Charles J. Crist, Jr., Attorney General, Tallahassee, FL, and Douglas T. Squire, Assistant Attorney General, Daytona Beach, FL, for Appellee/Respondent.
PER CURIAM.
Jack Dempsey Ferrell, a prisoner under sentence of death, appeals an order of the trial court denying his motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 and petitions the Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const. For the reasons stated below, we affirm the denial of postconviction relief and deny the petition for habeas corpus.

FACTUAL AND PROCEDURAL BACKGROUND
Ferrell was charged with first-degree murder for the death of his girlfriend Mary Esther Williams. Ferrell and Williams lived together in an Orlando apartment and their relationship was marked by verbal and physical confrontations. During an argument overheard by neighbors on April 18, 1992, Ferrell shot Williams in the head twice. As he exited their apartment, Ferrell told one of the neighbors to call the police because he had *167 "just killed my old lady upstairs." Williams died from the brain injury ten days later. See Ferrell v. State, 653 So.2d 367, 369 (Fla.1995).
The jury found Ferrell guilty of first-degree murder and recommended a death sentence by a vote of ten to two. The judge followed the jury's recommendation and sentenced Ferrell to death. The judge found one aggravating factor, a prior violent felony conviction which was based on a second-degree murder conviction for the killing of a former girlfriend under strikingly similar circumstances. The judge failed to include an evaluation of the mitigating factors proposed by Ferrell.
On appeal, Ferrell raised five claims.[1] This Court found no merit to Ferrell's claims regarding the admission of evidence of a collateral crime, the failure to appoint co-counsel, and the denial of requested special jury instructions. Id. at 369-70. However, we determined that the sentencing order was inadequate as to the requisite findings required under section 921.141(3), Florida Statutes (Supp.1992).[2] Thus, we remanded the case to the trial court for a new sentencing order in which each of the statutory and nonstatutory mitigating factors proposed by Ferrell was evaluated as provided in Campbell v. State, 571 So.2d 415 (Fla.1990), receded from on other grounds by Trease v. State, 768 So.2d 1050, 1055 (Fla.2000). In light of this remand, the Court declined to address the merits of Ferrell's proportionality claim pending receipt of a new sentencing order. Ferrell, 653 So.2d at 370-71.
On remand, the trial court once again imposed a death sentence, finding that the one aggravating factor outweighed the six nonstatutory mitigating factors.[3] On appeal, Ferrell argued that the trial court erred in imposing sentence. Ferrell v. State, 680 So.2d 390 (Fla.1996). Ferrell claimed the judge had not made the required independent determination of the mitigating and aggravating circumstances, but simply changed his mind at the request of the state attorney, thereby delegating to the State the judge's responsibility to make findings on mitigation. Ferrell also argued that the trial court overlooked the testimony of the defense mental health expert because the sentencing order rejected the statutory mental mitigators "based on testimony from the guilt phase *168 of trial." According to Ferrell, the defense expert testified only in the penalty phase and thus his testimony was not considered in the assessment of mitigation.
However, this Court found no error in considering the expert's testimony because the record showed that the expert testified at both the guilt and penalty phases and that the expert's brief penalty phase testimony "encapsulated his vastly more extensive... and detailed guilt phase testimony." Id. at 391. The Court also rejected Ferrell's claim that his death sentence was disproportionate in light of the single aggravating circumstance found. Id. at 391-92. We concluded that the sentence was not disproportionate in light of the similar nature of his prior violent felony conviction[4] and the slight weight assigned to the mitigating circumstances. Id. at 391-92. Accordingly, the Court affirmed Ferrell's death sentence.
Ferrell filed an initial postconviction motion pursuant to Florida Rule of Criminal Procedure 3.850 in January 1998, raising thirty-two claims.[5] He filed an amended 3.850 motion with the trial court in June 2000, raising sixteen claims.[6]
*169 The trial court held a Huff[7] hearing in August 2000 and granted an evidentiary hearing on a number of Ferrell's claims. These claims included: ineffective assistance of counsel in failing to impeach or effectively cross-examine a witness; ineffective assistance of counsel in the presentation of mitigating evidence based on counsel's failure to adequately investigate mitigating evidence and failure to present lay witnesses, expert social work testimony, and medical evidence of brain damage during the penalty phase; denial of an individualized sentencing because the trial court refused to find the statutory mental mitigators based on off-the-record representations by the state attorney and that trial counsel rendered ineffective assistance in this regard; and judicial bias. When Ferrell's attorneys informed the court that they would be calling the sentencing judge, Circuit Judge Daniel P. Dawson, as a witness at the evidentiary hearing, Judge Dawson recused himself. Circuit Judge Maura T. Smith was assigned to the case. The evidentiary hearing was conducted on February 7-8, 2001. A second hearing was conducted on September 4, 2001, on the issue of medical testing. Final documents in support of Ferrell's claims were filed on April 17, 2002.
On May 23, 2002, the trial court entered an order denying postconviction relief. All of the claims in the initial motion were denied without an evidentiary hearing and all but two of the claims were found to be insufficiently pled. The trial court concluded that Ferrell's claim that he was being denied effective postconviction representation due to lack of funding and understaffing of the Office of Capital Collateral Regional Counsel had not been pled with specificity, nor had he shown how he had been prejudiced. Further, claims of ineffective assistance of postconviction counsel are not a valid basis for relief. The trial court found the public records claim to be moot because all of Ferrell's outstanding public record issues had been resolved in 2000 before his amended motion was filed. The trial court also denied relief on all sixteen claims raised in Ferrell's amended motion.
Ferrell has appealed the denial of his postconviction motion to this Court. He has also filed a petition for a writ of habeas corpus with this Court.

RULE 3.850 MOTION ON APPEAL
Ferrell has appealed the denial of postconviction relief to this Court, raising three issues. He contends that (1) the trial court erred in denying his claim of ineffective assistance of counsel during the penalty phase based on counsel's alleged failure to adequately investigate, prepare, and present mitigation evidence through lay witness testimony and expert social work testimony; (2) the trial court erred in denying relief based on trial counsel's failure to seek additional expert assistance in determining the extent of Ferrell's brain damage; and (3) he was denied an individualized sentencing and reasoned weighing of the aggravating and mitigating circumstances in his resentencing proceeding. We address each claim in turn below.

Mitigating Evidence
In order to prevail on a claim of ineffective assistance of counsel, a defendant must show that trial counsel's performance was deficient and that the deficient performance prejudiced the defendant so as to deprive the defendant of a fair trial. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); see also Wiggins v. Smith, 539 U.S. 510, 123 S.Ct. 2527, 156 *170 L.Ed.2d 471 (2003) (reaffirming the Strickland two-prong analysis for claims of ineffective assistance of counsel). In reviewing counsel's performance, the reviewing court must be highly deferential to counsel, and in assessing the performance, every effort must "be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S.Ct. 2052; see also Rivera v. Dugger, 629 So.2d 105, 107 (Fla.1993). As to the first prong, the defendant must establish that "counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687, 104 S.Ct. 2052; see also Cherry v. State, 659 So.2d 1069, 1072 (Fla.1995). For the prejudice prong, the reviewing court must determine whether there is a reasonable probability that, but for the deficiency, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. See Strickland, 466 U.S. at 695, 104 S.Ct. 2052; see also Valle v. State, 705 So.2d 1331, 1333 (Fla.1997). "Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." Strickland, 466 U.S. at 687, 104 S.Ct. 2052.
With respect to the investigation and presentation of mitigation evidence, the Supreme Court observed in Wiggins that "Strickland does not require counsel to investigate every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant at sentencing. Nor does Strickland require defense counsel to present mitigating evidence at sentencing in every case." Wiggins, 539 U.S. at 533, 123 S.Ct. 2527. Rather, in deciding whether trial counsel exercised reasonable professional judgment with regard to the investigation and presentation of mitigation evidence, a reviewing court must focus on whether the investigation resulting in counsel's decision not to introduce certain mitigation evidence was itself reasonable. Id. at 523, 123 S.Ct. 2527; Strickland, 466 U.S. at 690-91, 104 S.Ct. 2052. When making this assessment, "a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." Wiggins, 539 U.S. at 527, 123 S.Ct. 2527.
In assessing Ferrell's claims of ineffective assistance of counsel, the trial court applied the Strickland standard and concluded that relief was not warranted. However, a claim of ineffective assistance of counsel presents a mixed question of law and fact which is subject to plenary review by this Court based on the Strickland test. See Stephens v. State, 748 So.2d 1028, 1033 (Fla.1999). This requires an independent review of the trial court's legal conclusions while giving deference to the trial court's factual findings. See id.
At the evidentiary hearing, the trial court heard testimony relating to counsel's alleged failure to present mitigation evidence through lay witnesses. Ferrell's trial counsel, Michael Irwin, testified that he hired an investigator who interviewed Ferrell's mother and former common law wife. However, the mother, who lived in North Carolina, suffered from a heart condition that hampered her ability to travel to Florida for the trial. The former common law wife, who was an amputee, did not want to travel and refused to testify.
A childhood friend, Ferrell's mother, his half-sister, two aunts, and his brother-in-law *171 testified on Ferrell's behalf at the postconviction evidentiary hearing. These witnesses testified about Ferrell's childhood, including that he was a hard worker, had worked as an agricultural laborer from early childhood, and had experienced racial prejudice and poverty. Ferrell's mother testified that his father died when he was three years old, but she did not offer any opinion as to the impact of the death on Ferrell's life. Ferrell's half-sister testified that their mother drank, but she offered no insight into how this affected Ferrell's life. The half-sister also testified that even at a young age Ferrell worked hard to support the family and to enable the other children to attend school. She stated that no one had contacted her to testify at Ferrell's trial, but that she would have been willing to do so. The two aunts testified that Ferrell had fallen from a truck and hit his head when he was a child, but did not know the extent of his injuries or how the accident affected Ferrell. The brother-in-law testified that Ferrell had been very hospitable when he and his wife (Ferrell's half-sister) stayed with Ferrell in Orlando in 1989.
At Ferrell's trial, trial counsel presented three lay witnesses who testified about mitigating circumstances. Ferrell's former employer and his supervisor both testified that Ferrell was a good worker and got along well with his coworkers. A friend and former neighbor testified that Ferrell was a good man who helped her family, but that he had an alcohol problem and his personality changed when he was drinking. Defense counsel also hired neuropsychologist Dr. James Upson to administer tests and evaluate Ferrell on three separate dates before trial. Dr. Upson testified at length about Ferrell's organic brain damage, his impaired intellectual functioning, and his alcoholism. Based on the mitigating evidence presented, the sentencing judge found six nonstatutory mitigators established: Ferrell was under "some mental or emotional disturbance," was "under the influence of alcohol," and had "some impairment" of his ability to conform his conduct to the requirements of the law at the time of the killing; he was a good worker and prisoner; and he was remorseful about the killing.
In denying Ferrell's claim of ineffective assistance of counsel on this issue, the trial court applied the two-prong Strickland standard and concluded that Ferrell had not satisfied either prong. The court concluded that defense counsel's "decision not to call additional lay witnesses during the penalty phase was the result of reasonable professional judgment" and not deficient performance. The court noted that Ferrell had not presented evidence that the witnesses who testified at the evidentiary hearing could have been located at the time of trial or would have been willing to testify.[8] The court also concluded that these lay witnesses did not present any evidence that had not been considered by the sentencing judge, nor would their testimony at trial "have induced a reasonable doubt respecting guilt." Thus, the trial court denied relief on this claim.
We agree with the trial court's assessment that trial counsel's investigation and preparation of mitigating evidence for trial was not deficient. This is not a case where counsel conducted no investigation or presented no mitigating evidence. See, e.g., Torres-Arboleda v. Dugger, 636 So.2d 1321, 1326 (Fla.1994) (finding ineffective assistance of counsel during penalty phase where counsel made no attempt to investigate family history and background and *172 admitted that he had no strategic reason for failing to present mitigating evidence during the penalty phase). This is also not a case where "counsel never attempted to meaningfully investigate mitigation." Rose v. State, 675 So.2d 567, 572 (Fla.1996) (concluding that defendant was entitled to relief in case where trial court found no mitigating circumstances and counsel made practically no investigation of mitigation and presented little mitigation evidence in the sentencing proceedings despite the existence of substantial evidence that would have been revealed by reasonable investigation); see Baxter v. Thomas, 45 F.3d 1501, 1515 (11th Cir.1995) (stating petitioner is prejudiced "where defense counsel was deficient in failing to investigate and present psychiatric mitigating evidence"). Trial counsel hired an investigator to inquire about Ferrell's background and family. The investigator contacted both Ferrell's mother and his common law wife, but they were either unable or unwilling to testify at trial. Much of the lay witness testimony presented at the evidentiary hearing involved mitigating evidence already presented at trial and found by the trial court as establishing nonstatutory mitigating circumstances. Further, almost all of the lay witnesses who testified at the evidentiary hearing had little or no contact with Ferrell for many years and were unable to illuminate how the circumstances of Ferrell's childhood had affected him.
Although trial counsel could have hired more experts and brought in more witnesses, the standard for assessing ineffective assistance claims "is not how present counsel would have proceeded, in hindsight, but rather whether there was both a deficient performance and a reasonable probability of a different result." Brown v. State, 846 So.2d 1114, 1121 (Fla.2003) (quoting Cherry v. State, 659 So.2d 1069, 1073 (Fla.1995)); see also Strickland, 466 U.S. at 689, 104 S.Ct. 2052 ("Even the best criminal defense attorneys would not defend a particular client in the same way."). Further, the known mitigating evidence would not necessarily "lead a reasonable attorney to investigate further" in this case. Wiggins, 539 U.S. at 527, 123 S.Ct. 2527.
However, we agree with Ferrell that the trial court did not properly assess the lay witness evidence under the prejudice prong of Strickland. The trial court concluded that even if counsel had presented these witnesses at the penalty phase of Ferrell's trial, "their testimony would [not] have induced a reasonable doubt respecting guilt." This lay witness testimony was not offered as to guilt, but as mitigation in support of a life sentence. Thus, under the proper analysis the court should have determined whether there is a reasonable probability that the sentence would have been different if this evidence had been presented at the penalty phase. In light of the cumulative nature of this mitigation evidence and the fact that the sentencing judge found these same circumstances in mitigation, we conclude that Ferrell could not prove prejudice from the failure to present these witnesses.
Moreover, because the Strickland standard requires establishment of both prongs, when a defendant fails to make a showing as to one prong, it is not necessary to delve into whether he has made a showing as to the other prong. See Strickland, 466 U.S. at 697, 104 S.Ct. 2052 ("[T]here is no reason for a court deciding an ineffective assistance claim ... to address both components of the inquiry if the defendant makes an insufficient showing on one."); see also Downs v. State, 740 So.2d 506, 518 n. 19 (Fla.1999) (finding no need to address prejudice prong where defendant failed to establish deficient performance prong). Thus, the *173 trial court was not required to even reach the prejudice prong.
Next, Ferrell claims that the trial court should have granted him relief on his claim that counsel was ineffective for failing to engage a social worker to conduct a psychosocial assessment of how Ferrell's life shaped his behavior on the day of the crime. The trial court conducted two separate evidentiary hearings on Ferrell's postconviction claims: a February 2001 hearing on all claims except the allegation of ineffective assistance of counsel in the presentation of medical evidence of brain damage; and a hearing on the medical evidence claim in September 2001. At the close of the February hearing, the judge asked whether the defendant had anything else to present. Ferrell's postconviction counsel stated that while the defense had considered calling more witnesses, they "decided not to proceed with them." When different attorneys took over Ferrell's representation prior to the September evidentiary hearing, the new counsel requested an evidentiary hearing on the social worker testimony issue. However, counsel stated that they had no evidence available to present on this issue at the September hearing and requested a new hearing at a later date. At the close of the September hearing, Ferrell's counsel requested permission to file a proffer on the social worker claim. Counsel renewed this request at a December status hearing and the court agreed to accept the proffer.
The proffer, which was filed in January 2002, included documents from three social work experts. These documents included: a notarized letter from Dr. Marvin Dunn, a social worker and expert witness, detailing the facts of Ferrell's childhood and concluding that his criminal behavior was impacted by these factors; a fax from social work practitioner Marjorie Hammock detailing how she would have gathered information about Ferrell's background and presented it to the jury; and a letter from attorney-psychologist Bill Mosman stating his opinion that a licensed clinical social worker should have been appointed to assist counsel with the preparation of the penalty phase of the trial and could have illuminated a number of clinical issues present in Ferrell's case.
After reviewing the proffered documents and defense counsel's written argument, the trial court denied relief on this claim. First, the court noted that the proffered evidence involved circumstances already considered by the sentencing judge. Second, even if counsel had presented the proffered testimony of the social workers, it would not have "induced a reasonable doubt respecting guilt." Third, the claim was procedurally barred because the defendant chose not to present any evidence on this claim when given the opportunity to do so at the February hearing.
We do not agree with the court's analysis of this claim. As explained with respect to the lay witness claim above, the trial court applied the wrong standard in assessing prejudice from counsel's failure to present expert social worker testimony and evaluation during the trial. Such testimony would not have had any effect on the determination of guilt, but would have been offered in mitigation to show that life was the appropriate sentence. Furthermore, the claim was not procedurally barred. However, notwithstanding these errors, we conclude that the trial court reached the right conclusion in denying relief on the issue.
Ferrell's claim of ineffective assistance based on the failure of trial counsel to seek the expert assistance of a social worker is a fact-based issue that required development at an evidentiary hearing, as evidenced by postconviction counsel's proffer of testimony from the expert social *174 workers. See Owen v. State, 773 So.2d 510, 515 (Fla.2000). However, Ferrell "opted to forego" the presentation of such evidence at the scheduled evidentiary hearing and thus waived the claim. Id.
For the reasons expressed above, we affirm the trial court's denial of relief on the both aspects of Ferrell's claim of ineffective assistance in the investigation and presentation of mitigating evidence.

Medical Testing Evidence
Ferrell claims that defense counsel rendered ineffective assistance by failing to seek additional expert assistance in order present medical evidence of brain damage. At trial, neuropsychologist Dr. James Upson testified that Ferrell suffers from brain damage and opined that the statutory mental mitigators of extreme mental disturbance and substantial impairment were present in Ferrell's case. Dr. Upson based his opinions on a number of psychological tests he had administered to Ferrell and on his interviews of Ferrell. Ferrell contends that trial counsel should have supported Dr. Upson's testimony with medical testing evidence.
In his motion for postconviction relief, Ferrell claimed that Dr. Upson's testimony and expertise were called into question by the State's cross-examination of Dr. Upson[9] and by testimony of the medical examiner who opined that brain damage caused by long term alcohol abuse needs to be confirmed by medical testing. The motion also stated that Ferrell had been examined after conviction by neuropsychologist Dr. Henry Dee and diagnosed with brain damage that could be verified by a PET (Positron Emission Tomography) scan. Thus, Ferrell asserted, counsel rendered ineffective assistance by failing to have a PET scan, or equivalent testing, conducted in order to support Dr. Upson's finding of organic brain damage. To the extent that PET scan testing was not available at the time of Ferrell's trial, he argued that it is newly discovered evidence. Ferrell also claimed that counsel was ineffective in never asking the court to find brain damage as a mitigating circumstance. Ferrell also argued that he had the right to have a SPECT (Single Photon Emission Computed Tomography) brain scan conducted during the postconviction proceedings to show brain damage and to support his claim that counsel could have presented better demonstrative evidence of brain damage at trial. The court bifurcated the evidentiary hearing on this medical testing claim from the evidentiary hearing on Ferrell's other postconviction claims.
At a status hearing in March 2001, the State argued that Ferrell had to show a particularized need for brain scans to be conducted, as required by this Court's decision in Rogers v. State, 783 So.2d 980, 999 (Fla.2001). While the trial court ruled that neuropsychiatrist Dr. Walter Afield could conduct testing of Ferrell and the State could depose Dr. Afield after the testing, the court did not order that a scan be conducted. By the next status hearing in May 2001, the parties were arguing the merits of a SPECT scan instead of a PET scan.[10] At this May hearing, the State *175 conceded that, based on the deposition of Dr. Afield, Ferrell had mild to moderate brain damage to his frontal lobe and that a SPECT scan would show a black and white picture of the damage. However, the State still objected to the SPECT scan being conducted and argued that there was no particularized need for the scan because Dr. Afield's testing confirmed the diagnoses of frontal lobe brain damage made by Drs. Dee and Upson; the SPECT scan could not show how the physical brain damage affected Ferrell's capacity to function; and the sentencing judge had already found brain impairment as a mitigating factor. Ferrell's counsel responded that the SPECT scan was necessary to confirm the brain damage as evidence of counsel's ineffectiveness at trial. The trial court ruled that no SPECT scan would be conducted, but acknowledged that a SPECT scan would show a black and white image of current mild to moderate damage in the frontal lobe of Ferrell's brain.
At the September evidentiary hearing, the trial court heard testimony from Ferrell's trial counsel Michael Irwin, diagnostic radiologist Dr. Michael Foley, neuropsychiatrist Dr. Afield, clinical neuropsychologist Dr. Dee, and neuropsychologist Dr. Upson, who also testified on Ferrell's behalf at the trial. In summary, the testimony at the evidentiary hearing indicated that PET and SPECT scans were not widely used at the time of Ferrell's trial in 1992; while a SPECT scan would confirm Ferrell's brain damage, a clinician would still have to discern his level of impairment; the experts were able to diagnose Ferrell as being intellectually impaired based on their observations, testing, and Ferrell's records without conducting a SPECT scan; the experts attributed the frontal lobe damage to Ferrell's chronic alcohol abuse; the evaluations and diagnoses of the postconviction experts were very similar to Dr. Upson's pretrial evaluation and diagnosis; Dr. Upson did not advise trial counsel to conduct a brain scan; and there was no evidence that such scans were being used in capital cases at the time of Ferrell's trial.[11]
At the close of the hearing, Ferrell renewed his motion to have a SPECT scan to confirm the testimony of his experts. The court ordered Ferrell's postconviction counsel to identify cases in which a court had ordered such brain scans in 1992, the time of Ferrell's trial, but the cases cited did not support counsel's assertion. The court did not order the SPECT scan to be conducted. The court also denied postconviction relief on the claim that counsel was ineffective in this regard.
Ferrell contends that the trial court erred in denying him relief and in denying his request to conduct a SPECT scan to confirm the testimony of his postconviction experts. "[A] particularized showing of necessity is the polestar for whether any diagnostic test should be authorized by the trial court." Rogers v. State, 783 So.2d 980, 999 (Fla.2001) (concluding that trial court did not abuse its discretion in denying request for PET scan); see also Robinson v. State, 761 So.2d 269, 275-76 (Fla. *176 1999) (same as to SPECT scan). This Court established the following guidelines for evaluating a claim relating to the denial of a diagnostic test: (1) the defendant must establish a particularized need for the test, that is, that the test is necessary for experts to make a more definitive determination as to whether the defendant's brain is functioning properly and to provide their opinions about the extent of the defendant's brain damage; and (2) this Court must consider whether the defendant was prejudiced by the trial court's denial of the motion requesting a scan. See Rogers, 783 So.2d at 999.
In the instant case, the record supports the trial court's conclusion that there was no particularized need for the SPECT scan. The postconviction experts independently determined that Ferrell suffered from the same injury, i.e., mild to moderate diffuse brain damage to the frontal lobe caused by chronic alcohol abuse. While the scan would have confirmed the experts' diagnoses, it was not necessary in formulating their medical opinions about his brain damage. Further, Ferrell cannot show any prejudice from the trial court's denial of the SPECT scan. His experts were still able to testify that he had mild to moderate brain damage, which was consistent with the testimony presented at trial. The scan would not have provided any additional information about Ferrell's functional impairment than that presented. Thus, the trial court did not abuse its discretion in denying this request.
As to Ferrell's claim that counsel rendered ineffective assistance in not requesting a SPECT scan in 1992, we agree with the trial court that he is not entitled to relief. Under the Strickland standard, Ferrell must prove both deficient performance by counsel and prejudice from this deficiency. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). There was no evidence that such scans were being ordered in capital cases in Florida in 1992. Thus, counsel's failure to obtain a scan was not deficient performance. In addition there is no reasonable probability that the presentation of a scan would have resulted in a different outcome here. The jury heard Dr. Upson's testimony and was aware of Ferrell's problems. The scan results could have confirmed Dr. Upson's diagnosis of brain damage but were not necessary in forming that diagnosis. Thus, Ferrell was not prejudiced by any alleged failure of counsel in this regard. Accordingly, we affirm the trial court's denial of postconviction relief on this claim.

Individualized Sentencing
Ferrell claims that he was denied his right to an individualized sentencing and an independent weighing of the aggravating and mitigating circumstances in his resentencing proceeding. He also contends that counsel was ineffective in failing to object to the proceedings.
This claim is premised on the proceedings that transpired in the trial court during our remand for a new sentencing order. On remand, the sentencing judge discovered that several pages of the original sentencing order had inadvertently been omitted from the record on appeal. The judge informed the parties about this omission at the resentencing hearing. The judge also gave the parties copies of the complete original sentencing order that he had discovered in his computer and stated his intention to resubmit the same order in complete form to this Court. The parties stipulated that the complete order found in the judge's computer accurately reflected the transcript of the original sentencing proceeding. However, the prosecutor stated concerns that this order still did not comply with the requirements of Campbell *177 and asked the judge to enter a new sentencing order. After a short recess, the judge gave the parties copies of another draft order and asked for their responses. The prosecutor once again stated her concern that the order did not comply with Campbell, as it did not state with specificity whether the judge was finding the proposed statutory mental mitigators or a nonstatutory level of mental mitigation. The judge took another recess and entered the final sentencing order, finding that the evidence did not rise to the statutory level of mental mitigation, only the nonstatutory level. "[B]ased on testimony from the guilt phase of the trial," the trial judge rejected the proposed statutory mitigators of substantial impairment of the defendant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law and the crime was committed while the defendant was under the influence of extreme mental or emotional disturbance, but found that nonstatutory mental mitigators had been established. The judge characterized these mitigators as "some impairment" and under "some mental or emotional disturbance." The sentencing order found one aggravating circumstance of a prior violent felony conviction and several nonstatutory mitigators. Finding that the aggravation outweighed the mitigation, the judge again imposed the death sentence.
On appeal after resentencing, Ferrell raised a claim that the trial court erred in imposing the death sentence. He argued that the trial judge had not made the required independent determination of the mitigating and aggravating circumstances, but simply changed his mind at the request of the state attorney, thereby delegating to the State the judge's responsibility to make findings on mitigation. Ferrell further argued that it was unclear that the judge had considered the penalty phase testimony of the defense expert based on the sentencing order statement that the expert testified during the guilt phase. He also contended that the final sentencing order was "fraught with inconsistencies and ambiguities."
This Court found no error on this point. See Ferrell, 680 So.2d at 391. The Court stated that "[t]he record shows that Dr. Upson [the defense expert witness] testified in both the guilt and penalty phases and that his brief testimony in the penalty phase (ten pages of transcript) merely encapsulated his vastly more extensive (ninety-two pages of transcript) and detailed guilt phase testimony." Id. In a motion for rehearing, Ferrell argued that this Court had overlooked his claim that the proceedings on resentencing were improper because the trial judge had found the statutory mental mitigators in two previous sentencing orders and then found only nonstatutory mental mitigation in the final order at the urging of the State. This Court denied rehearing, and two justices dissented on these very grounds. Id. at 392 (Anstead, J., dissenting, with Kogan, C.J., concurring in dissenting opinion). Thus, Ferrell's postconviction claim regarding the sentencing order and the proceedings at the resentencing proceeding was raised and rejected on direct appeal.
Despite this fact, however, the trial court granted an evidentiary hearing on this postconviction claim because "it involved allegations concerning information which was not a part of the record." At the hearing, the trial court heard testimony from Judge Dawson, who presided over Ferrell's trial and his resentencing, defense counsel Irwin, and prosecutor Dorothy Sedgwick. Copies of the three sentencing orders[12] were also entered into evidence at the evidentiary hearing.
*178 The evidence adduced at the evidentiary hearing is entirely consistent with the supplemental record on appeal after the resentencing proceeding. The records of that hearing and of the resentencing proceeding reveal the following facts. A portion of the original sentencing order was inadvertently excluded from the record on appeal. On remand, the sentencing judge discovered a complete copy of the original sentencing order in his computer and gave copies to the parties and discussed this matter with them in chambers. Both parties stipulated that the complete copy conformed to the transcript of the original sentencing proceeding. This in-chambers discussion was memorialized for the record. At the resentencing proceeding, the prosecutor expressed her opinion that even with the missing pages restored the original sentencing order did not comply with the requirements of Campbell. The prosecutor urged the judge to enter a new sentencing order explaining in more detail his findings as to mitigation. When defense counsel objected, the prosecutor responded that she was not asking the judge to change his ruling, but simply asking for a proper articulation under Campbell. The same discussion ensued when the judge asked for comment on the second proposed sentencing order. Defense counsel objected to the argument by the prosecutor.
In denying postconviction relief, the trial court found that the intent of the sentencing court never changed over the course of the resentencing proceedings and, while the prosecutor urged the court to change the way it expressed its intent, this was not improper because no new evidence was presented. The trial court also found that defense counsel's performance at the resentencing proceeding was not deficient because counsel did object to what he considered improper argument about mitigation by the prosecutor. Further, the trial court found no evidence of off-the-record discussions that were not later memorialized on the record. Thus, the trial court concluded, there was nothing else that defense counsel could or should have objected to, nor any evidence that further objection would have resulted in a different outcome. The trial court also noted that this Court was aware of the circumstances of the resentencing proceedings, based on the supplemental record, and yet affirmed Ferrell's death sentence on appeal. Accordingly, the trial court denied relief on this claim.
We agree with the trial court that Ferrell is not entitled to relief on this claim. Ferrell's substantive claims regarding the sentencing order and the proceedings at the resentencing proceeding were raised and rejected on direct appeal and thus are procedurally barred in this postconviction proceeding. See Smith v. State, 445 So.2d 323, 325 (Fla.1983) ("Issues which either were or could have been litigated at trial and upon direct appeal are not cognizable through collateral attack."); see also Allen v. State, 854 So.2d 1255, 1262 (Fla.2003) (finding inmate was precluded from raising claim relating to proportionality review in habeas petition as claim had already been raised and rejected on direct appeal). Ferrell cannot prevail on his claim of ineffective assistance of counsel in this regard either. The record shows that defense counsel objected to the prosecutor's argument at the resentencing hearing. Furthermore, as this Court explained *179 in Reese v. State, 728 So.2d 727, 728 (Fla.1999), when a case is remanded for a new sentencing order based on Campbell error, "the court is to conduct a new hearing, giving both parties an opportunity to present argument and submit sentencing memoranda before determining an appropriate sentence." However, "[n]o new evidence shall be introduced at the hearing." Id. The State's argument as to the requirements of a sentencing order under Campbell was entirely consistent with the procedure outlined in Reese. Thus, postconviction relief is not warranted on this claim.

PETITION FOR WRIT OF HABEAS CORPUS
Ferrell raises two claims in his petition for habeas corpus filed with this Court. He contends that (1) Florida's death penalty statutes are unconstitutional under Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002); and (2) he may be incompetent at the time of his execution. As explained below, Ferrell is not entitled to habeas relief on either claim.

Apprendi and Ring
Ferrell raises a number of constitutional challenges to Florida's death penalty sentencing statute based on the United States Supreme Court's decisions in Apprendi and Ring. Ferrell claims that Florida's sentencing scheme is unconstitutional because it does not charge the aggravating circumstances in the indictment; submit the aggravating circumstances to the jury or require a specific jury finding that each aggravator has been proven beyond a reasonable doubt; require a unanimous jury verdict as to a death sentence recommendation; give the jury instruction on what constitutes sufficient aggravators to warrant a death sentence; and treat the jury's sentencing recommendation as final rather than advisory.
The United States Supreme Court's recent decision in Schriro v. Summerlin, 542 U.S. 348, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004), held that the decision in Ring is not retroactive. A majority of this Court has also concluded that Ring does not apply retroactively in Florida to cases that are final, under the test of Witt v. State, 387 So.2d 922 (Fla.1980). See Johnson v. State, 904 So.2d 400 (Fla. 2005). We have similarly concluded that Apprendi is not retroactive in application. See Hughes v. State, 30 Fla. L. Weekly S285, S288 (Fla. Apr. 28, 2005). Accordingly, Ferrell's Ring and Apprendi claims are procedurally barred in these postconviction proceedings.
However, even if the claims were not barred, they would be without merit. This Court has recognized that a defendant is not entitled to relief under the "prior-conviction exception" to Apprendi[13] where the aggravating circumstances include a prior violent felony conviction. See, e.g., Duest v. State, 855 So.2d 33, 49 (Fla.2003) (noting rejection of Ring claims in a number of cases involving a prior-conviction aggravator), cert. denied, 541 U.S. 993, 124 S.Ct. 2023, 158 L.Ed.2d 500 (2004); Grim v. State, 841 So.2d 455, 465 (Fla.) (explaining that defendant was not entitled to relief under Ring where aggravating circumstances of multiple convictions for prior violent felonies and contemporaneous *180 felony of sexual battery were unanimously found by jury), cert. denied, 540 U.S. 892, 124 S.Ct. 230, 157 L.Ed.2d 166 (2003). In Ferrell's case, the trial court found the aggravating circumstance of a prior violent felony conviction based on his second-degree murder conviction for shooting a previous girlfriend in the head eight times after an argument. A unanimous jury found Ferrell guilty beyond a reasonable doubt of this offense, thereby satisfying the mandates of the United States and Florida Constitutions. See Kimbrough v. State, 886 So.2d 965, 984 (Fla.2004); Doorbal v. State, 837 So.2d 940, 963 (Fla.), cert. denied, 539 U.S. 962, 123 S.Ct. 2647, 156 L.Ed.2d 663 (2003).
Additionally, we have rejected claims that Ring requires the aggravating circumstances to be alleged in the indictment or to be individually found by a unanimous jury verdict. See Hodges v. State, 885 So.2d 338, 359 nn. 9 & 10 (Fla. 2004); Blackwelder v. State, 851 So.2d 650, 654 (Fla.2003); Porter v. Crosby, 840 So.2d 981, 986 (Fla.2003). Thus, Ferrell is not entitled to habeas relief on his Apprendi and Ring claims.

Competency to Be Executed
Ferrell claims that he may be incompetent at the time of execution because he has been incarcerated since 1992 and statistics show that mental capacity diminishes over a long period of incarceration. Florida Rule of Criminal Procedure 3.811(a) provides that "[a] person under sentence of death shall not be executed while insane to be executed." The rule also provides that "[n]o motion for a stay of execution pending hearing, based on grounds of the prisoner's insanity to be executed, shall be entertained by any court until such time as the Governor of Florida shall have held appropriate proceedings for determining the issue pursuant to the appropriate Florida Statutes." Fla. R.Crim. P. 3.811(c).
Ferrell concedes that this claim is not ripe for review as he has not been found incompetent and a death warrant has not been signed. However, Ferrell contends that he is raising the issue for preservation purposes. This Court has repeatedly found that no relief is warranted on similar claims. See State v. Coney, 845 So.2d 120, 137 n. 19 (Fla.2003) (rejecting claim that defendant was insane to be executed where he acknowledged that claim was not yet ripe and was being raised only for preservation purposes); Jones v. State, 845 So.2d 55, 74 (Fla.2003) (finding claim that defendant may be insane to be executed was "not ripe for review" where defendant had not been found incompetent and a death warrant had not been signed; noting that defendant made claim "simply to preserve it for review in the federal court system"); Hall v. Moore, 792 So.2d 447, 450 (Fla.2001) (stating that it is premature for a death-sentenced individual to present a claim of incompetency or insanity, with regard to his execution, if a death warrant has not been signed). Thus, Ferrell is not entitled to relief on this claim.

CONCLUSION
For the reasons stated above we affirm the trial court's denial of postconviction relief and we deny habeas relief.
It is so ordered.
PARIENTE, C.J., and WELLS, ANSTEAD, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] Ferrell asserted that the trial court: (1) improperly admitted evidence relating to a collateral crime; (2) erred in denying his motion to appoint co-counsel; (3) erred in denying requested penalty phase jury instructions; (4) erred in imposing a death sentence without making the requisite findings of fact in writing; and (5) improperly imposed a death sentence based on one aggravating circumstance and approximately seven mitigating circumstances. Ferrell, 653 So.2d at 369.
[2] The relevant portion of the 1992 statute is the same as the current statute. The statute requires "[i]n each case in which the court imposes the death sentence, the determination of the court shall be supported by specific written findings of fact based upon the [aggravating and mitigating] circumstances in subsections (5) and (6)." § 921.141(3), Fla. Stat. (2004). Further, the court must set forth in writing that "sufficient aggravating circumstances exist" and that "there are insufficient mitigating circumstances to outweigh the aggravating circumstances." Id. § 921.141(3).
[3] On resentencing, the trial court assigned "considerable weight" to the aggravating factor of a prior conviction of a violent felony. The court assigned "little weight" to the mitigating circumstances that there was some impairment of Ferrell's ability to conform his conduct to the requirements of the law at the time of the crime, that Ferrell was under some mental or emotional disturbance at the time of the killing, and that Ferrell was under the influence of alcohol at the time of the killing. The court assigned "very little weight" to Ferrell's record as a good worker and prisoner and his remorse for the killing.
[4] Ferrell was convicted of second-degree murder for shooting his former girlfriend in the head eight times with a rifle after an altercation. As this Court explained, that prior murder bore "many of the earmarks of the present crime." Ferrell, 680 So.2d at 391.
[5] The order denying postconviction relief only addressed two of the claims raised in Ferrell's initial motionthe adequacy of funding to the Office of Capital Collateral Regional Counsel and the compliance with his public records requests. The order found the remaining thirty claims to be insufficiently pled as each was supported only by a statement that counsel had not had time to adequately investigate and prepare in order to plead the claim with more specificity.
[6] Ferrell asserted that: (1) trial counsel rendered ineffective assistance during the guilt phase of trial because he inadequately argued a motion for appointment of co-counsel, called an expert witness to testify prematurely at the guilt phase, and failed to impeach and effectively cross-examine several witnesses; (2) trial counsel rendered ineffective assistance during the penalty phase because he failed to present mitigating evidence through lay witnesses and an expert social worker, failed to present medical evidence of brain damage, inadequately argued a motion for appointment of co-counsel, and failed to object to the evidence of the prior conviction; (3) Ferrell was denied due process and equal protection based on trial counsel's failure to engage a competent psychiatrist, to conduct necessary testing, and to adequately investigate Ferrell's background which deprived him of an individualized and reliable sentencing; (4) the State committed violations of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), based on the testimony of several witnesses; (5) Ferrell was denied an individualized sentencing and weighing of aggravating and mitigating factors because the trial court refused to find the statutory mental mitigators based on off-the-record representations by the prosecutor and counsel rendered ineffective assistance because he failed to properly object and raise the issue; (6) the judge exhibited bias; (7) the State committed a violation of Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), based on the presentation of false testimony by one witness; (8) the prosecutor improperly excluded jurors on the basis of race and sex; (9) the jury's sense of responsibility for sentencing was diluted in violation of Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), and counsel rendered ineffective assistance because he failed to properly litigate the issue; (10) Florida's capital sentencing statute is unconstitutional on its face and as applied and counsel rendered ineffective assistance because he failed to properly litigate the issue; (11) the disciplinary rule which prohibits attorneys from interviewing jurors is unconstitutional; (12) the standard jury instruction given during the penalty phase improperly shifted the burden to Ferrell to prove that death is an inappropriate sentence; (13) electrocution is cruel an unusual punishment; (14) lethal injection is cruel and unusual punishment; (15) Ferrell may be incompetent to be executed at the time of execution; and (16) cumulative error deprived Ferrell of a fundamentally fair trial.
[7] Huff v. State, 622 So.2d 982 (Fla.1993).
[8] This factual finding is not supported by the record as Ferrell's half-sister stated that she would have been willing to testify at Ferrell's trial.
[9] On cross-examination, Dr. Upson admitted that no medical testing had been conducted to ascertain Ferrell's brain damage and that he had not consulted other medical experts about the need for medical testing or about his opinion of Ferrell's condition.
[10] In his testimony at the evidentiary hearing, diagnostic radiologist Dr. Michael Foley explained the difference between PET and SPECT scans. According to Dr. Foley, a PET scan shows "hot spots" in the body that are more metabolically active and are especially useful in oncology studies because a cancer cell is more metabolically active than a normal cell. In contrast, a SPECT scan shows blood flow to a certain area of the body and a lack of blood flow shows physical damage to that area. Thus, a SPECT scan could give a visual image of the extent of brain damage based on the lack of blood flow.
[11] In fact, a capital cases defense manual prepared by the Florida Public Defender's Association and distributed in 1992 did not mention either PET or SPECT scans in a list of medical tests used to confirm brain damage. Furthermore, the manual cautioned that even the listed medical tests could be unreliable and did not always indicate organic brain damage. Instead, the manual stated that neuropsychological testing was actually more reliable in showing such deficits.
[12] The three orders included the incomplete original order that was considered by this Court on direct appeal as well as the complete original order that the judge found in his computer after we remanded the case for resentencing; the second draft order that the judge proposed during the resentencing; and the final order that was entered at resentencing and affirmed by this Court on appeal.
[13] In Apprendi, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to the jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S.Ct. 2348 (emphasis added).