670 So.2d 920 (1996)
STATE of Florida, Appellant, Cross-Appellee,
v.
Donald GUNSBY, Appellee, Cross-Appellant.
No. 84977.
Supreme Court of Florida.
January 11, 1996.
Rehearing Denied March 28, 1996.
Robert A. Butterworth, Attorney General and Kenneth S. Nunnelley, Assistant Attorney General, Daytona Beach, for Appellant, Cross-Appellee.
Bruce A. Peterson, Minneapolis, MN, and Douglas J. Chumbley of Popham, Haik, Schnobrich & Kaufman, Miami; John M. Baker of Greene Espel, Minneapolis, MN, and James C. Lohman, Tallahassee, for Appellee, Cross-Appellant.
*921 PER CURIAM.
The State of Florida appeals an order entered pursuant to Florida Rule of Criminal Procedure 3.850, in which the trial judge vacated Donald Gunsby's sentence of death and ordered a new sentencing proceeding. Gunsby cross-appeals an order entered pursuant to rule 3.850, in which the trial judge denied his motion to vacate the conviction. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. For the reasons expressed, we agree with the trial judge's finding that Gunsby is entitled to a new penalty-phase proceeding, but we also find that Gunsby is entitled to a new conviction-phase proceeding. We reach this conclusion based on the combined effect of the errors in this case, which include the State's erroneous withholding of evidence, the ineffective assistance of counsel in failing to discover evidence, and newly discovered evidence reflecting that this was a drug-related murder rather than a racially motivated crime.
The facts of this case are as follows. In 1988, Donald Gunsby was charged with the first-degree murder of Hesham Mohammad Awadallah. After the public defender's office withdrew due to conflict, the trial court appointed a private attorney as Gunsby's sole counsel. At the time of the appointment, the attorney was a sole practitioner who had been out of law school for less than one year.
In a two-day conviction-phase proceeding, two eyewitnesses identified Gunsby as the person who entered the grocery store where the murder occurred, shot the victim, and then fled. In addition to the testimony of the eyewitnesses, testimony was introduced from several other witnesses to whom Gunsby had made incriminating statements regarding the murder. The evidence presented at trial reflected that the grocery store was a legitimate family-run business, that the witnesses who testified against Gunsby were innocent bystanders, and that Gunsby committed this murder to "protect the black community." Gunsby was convicted as charged and the case proceeded to the penalty phase.
The penalty-phase proceeding lasted only a few hours, after which the jury voted, by a nine-to-three vote, to recommend the death penalty. The trial judge imposed the death sentence after finding no statutory mitigating circumstances, one non-statutory mitigating circumstance (mild retardation), and three aggravating circumstances: (1) the murder was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification; (2) Gunsby was previously convicted of another felony involving the use or threat of violence to the person; and (3) Gunsby was under a sentence of imprisonment at the time the murder was committed.
This Court unanimously affirmed Gunsby's conviction and, by a four-to-three vote, affirmed his sentence in Gunsby v. State, 574 So.2d 1085 (Fla.), cert. denied, 502 U.S. 843, 112 S.Ct. 136, 116 L.Ed.2d 103 (1991). This rule 3.850 proceeding followed that decision, in which Gunsby raised four claims regarding the conviction phase: (1) that the State withheld exculpatory information; (2) that he was denied effective assistance of counsel because his counsel failed to refute the State's case and to present an effective case of innocence; (3) that newly discovery evidence entitles him to a new trial; and (4) that his attorney made other prejudicial errors during the trial. He raised five claims regarding the penalty phase. The first four are based on ineffective assistance of counsel: (1) counsel failed to respond to fundamental abuses by the State; (2) counsel failed to investigate and present evidence of Gunsby's organic brain damage; (3) counsel failed to properly develop evidence in mitigation; and (4) counsel failed to object to vague jury instructions. In his fifth penalty-phase claim, Gunsby contended that execution of a mentally retarded individual constitutes cruel and/or unusual punishment.
After a week-long evidentiary hearing, the trial judge denied Gunsby's motion to vacate the first-degree murder conviction, but he granted Gunsby's motion to vacate the death sentence and ordered a new penalty-phase proceeding. In his order, the judge addressed one conviction-phase issue and two penalty-phase issues, summarily finding Gunsby's other claims to be without merit.
In the conviction issue addressed by the trial judge, Gunsby claimed that the State *922 wrongfully withheld exculpatory evidence in violation of Brady.[1] The trial judge found, and the state conceded, that the following information was withheld from Gunsby at the time of trial: (1) that key eyewitness Tony Awadallah had adjudication withheld on four criminal charges in exchange for his testimony so that he would not be discredited on the witness stand as having been convicted of a felony (he was released from jail before trial); (2) that Awadallah was arrested on new charges of burglary and dealing in stolen property before trial and these charges were pending against him at the time he testified; and (3) that another important state witness, Diane Williams, was arrested for violating her probation before testifying against Gunsby. The trial judge found that this information was withheld despite Gunsby's discovery request for such information and the trial judge's order to produce all criminal records of witnesses.
The trial judge was greatly concerned about the admitted Brady violations and reprimanded the State for the violations. Nonetheless, he found that, under Brady, a new trial was not warranted because "the outcome would probably not have been different," given the testimony of the two eyewitnesses and the other witnesses who heard Gunsby make admissions regarding the murder. In making this ruling, he noted that this was a "very close question."
The judge then addressed two penalty phase claims: (1) that counsel was ineffective in failing to object to false statements about Gunsby's prior criminal history; and (2) that counsel was ineffective in investigating and presenting mitigating evidence. In granting relief on each of these issues and ordering a new penalty-phase proceeding, the judge stressed that Gunsby's attorney had been out of law school for less than one year when appointed as Gunsby's attorney.
Regarding the first claim, the judge found that the prosecutor conveyed false information to the jury regarding the aggravating circumstance of Gunsby's previous felony convictions. Gunsby had been convicted of aggravated assault in 1967 and robbery in 1971. At the time of the 1988 trial, he was under sentence for possession of a firearm by a convicted felon and carrying a concealed firearm. The prosecutor erroneously told the jury on at least three separate occasions that Gunsby was convicted of assault with the intent to commit murder and on three separate occasions that Gunsby had been convicted of robbery and the use of a firearm during a felony. Gunsby's attorney never objected to any of these factual misstatements.
As to the second claim, the judge found that Gunsby's attorney erroneously failed to present mitigating evidence of Gunsby's organic brain damage and of Gunsby's true mental condition. He based this conclusion on his finding that Gunsby's attorney failed to submit the appropriate orders to obtain proper mental evaluations (he submitted orders used in noncapital cases), he failed to provide the medical experts with background information about Gunsby, he failed to depose the medical experts before they testified, and he obtained a third expert who was not qualified. He noted that these errors resulted in one of the experts inaccurately testifying at trial that Gunsby had no mental impairment and was of normal intelligence and in another expert giving the impression that the statutory mitigating circumstance regarding mental condition did not apply. He further noted that, at the evidentiary hearing, the first doctor completely reversed the opinion he gave at trial and the second substantially modified his opinion, with each contending that Gunsby's condition was much worse than indicated at trial.
Due to these errors, the judge found that Gunsby was denied a fair penalty-phase proceeding because (1) the prosecutor's statements so affected the fairness and reliability of the penalty-phase proceedings that confidence in the outcome has been undermined; and (2) more than a reasonable probability exists that the outcome of the penalty proceedings would have been different if Gunsby's true mental condition had been presented.
In this appeal, the State argues that the trial judge erroneously vacated Gunsby's *923 sentence of death. In his cross-appeal, Gunsby argues that the trial judge erred in denying his motion to vacate the conviction. As discussed in the following paragraphs, we find that Gunsby is entitled to a new conviction-phase proceeding. Consequently, we do not reach the State's argument that the trial judge erred in vacating Gunsby's sentence of death.
Gunsby raises a number of issues in which he contends that he is entitled to a new trial, two of which we find to be dispositive. First, he argues that the State's erroneous withholding of exculpatory evidence entitles him to a new trial. Second, he asserts that he is entitled to a new trial because new evidence reflects that the State's key witnesses at trial gave false testimony in order to implicate him in a murder he did not commit and to hide the true identity of the murderer.
Regarding the first issue, no question exists that Brady violations occurred when the State failed to disclose the criminal records of two key witnesses. The State argues, however, that the trial judge correctly determined that no reasonable probability existed that the outcome of Gunsby's trial would have been different even had this evidence been presented. If this were the only guilt-phase issue having merit, we would be inclined to agree that the trial judge correctly decided this "close call." There were two eyewitnesses who positively identified Gunsby as the shooter and the Brady violations involved only one of those eyewitnesses. Additionally, at least three people overheard Gunsby make admissions concerning his commissions of the murder and the Brady violations involved only one of those individuals. When we consider this error in combination with the evidence set forth in the second issue, however, we cannot agree with the State's position.
In his second issue, Gunsby claims that the ineffective assistance of his counsel at trial and the newly discovered testimony of four witnesses at the rule 3.850 evidentiary hearing warrants a new trial. As indicated previously, the evidence presented at trial reflected that the grocery store business where this murder occurred was a legitimate family-run business, that the witnesses who testified against Gunsby were innocent bystanders, and that Gunsby committed this murder to "protect the black community." Gunsby contends that new evidence establishes that the murder was, in reality, drug related and was committed by a rival drug clan that was competing with the victim's brother for drug business. According to Gunsby, the jury was never told that the victim's brother, who was the intended target and the state's principal witness, was a well-known drug dealer in trouble over drug debts rather than a hardworking convenience store owner. Additionally, Gunsby asserts that the jury was never informed that both the victim's brother and the State's only other eyewitness told other witnesses that they did not know who did the shooting and that another alleged eyewitness, who never testified at trial, named two other individuals as the perpetrators of this crime. The State, on the other hand, contends that Gunsby is distorting the evidence presented at the rule 3.850 hearing and that, given the overwhelming evidence against Gunsby, the evidence would have made no difference in the outcome of Gunsby's trial. Moreover, the State argues that none of the evidence is newly discovered because Gunsby could have discovered this evidence at the time he was originally tried.
Clearly, the evidence presented at the rule 3.850 hearing undermined the credibility of several key witnesses who testified at trial. For instance, the husband of one of the eyewitnesses testified that she told him she could not see who shot the victim because the shooter was wearing a mask. Further testimony indicated that the eyewitness was romantically involved with one of the original suspects in the case. A third eyewitness, who did not testify at trial, also testified at the rule 3.850 hearing that the assailants were wearing pantyhose masks. A number of other inconsistencies existed between the testimony presented at the rule 3.850 hearing and the testimony presented at trial, which we do not address in detail here.
We do find some merit in the State's argument that much of this evidence does not meet the test for newly discovered *924 evidence. Newly discovered evidence is evidence that must have been unknown by the trial court, by the party, or by counsel at the time of trial, and it must appear that the defendant or his counsel could not have known of the evidence by the use of diligence. Jones v. State, 591 So.2d 911, 916 (Fla.1991). For a defendant to obtain relief based on newly discovered evidence, the evidence must be of such a nature that it would probably produce an acquittal on retrial. Id. at 915. In the face of due diligence on the part of Gunsby's counsel, it appears that at least some of the evidence presented at the rule 3.850 hearing was discoverable through diligence at the time of trial. To the extent, however, that Gunsby's counsel failed to discover this evidence, we find that his performance was deficient under the first prong of the test for ineffective assistance of counsel as set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (to establish ineffective assistance of counsel, a defendant must show that (1) counsel performed outside the broad range of competent performance and (2) the deficient performance was so serious that the defendant was deprived of a fair trial). The second prong of Strickland poses the more difficult question of whether counsel's deficient performance, standing alone, deprived Gunsby of a fair trial. Nevertheless, when we consider the cumulative effect of the testimony presented at the rule 3.850 hearing and the admitted Brady violations on the part of the State, we are compelled to find, under the unique circumstances of this case, that confidence in the outcome of Gunsby's original trial has been undermined and that a reasonable probability exists of a different outcome. Cf. Cherry v. State, 659 So.2d 1069 (Fla.1995) (cumulative effect of numerous errors in counsel's performance may constitute prejudice); Harvey v. Dugger, 656 So.2d 1253 (Fla.1995) (same). Consequently, we find that we must reverse the trial judge's order denying Gunsby's motion to vacate his conviction.
Accordingly, we reverse the order denying Gunsby's motion to vacate his conviction, and we remand this cause for a new trial. Our reversal of the order denying relief as to the conviction proceeding renders moot the State's appeal regarding the trial judge's granting of the motion to vacate Gunsby's sentence.
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW, KOGAN, HARDING, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).