PER CURIAM.
 

 Perry Alexander Taylor appeals an order of the circuit court denying his motion to vacate his conviction of first-degree murder and sentence of death filed under Florida Rule of Criminal Procedure 3.851 and petitions this Court for a writ of habe-as corpus. We have jurisdiction.
 
 See
 
 art. V, §§ 3(b)(1), (9), Fla. Const. For the reasons set forth below, we affirm the trial court’s denial of Taylor’s postconviction motion and deny Taylor’s petition for writ of habeas corpus.
 

 FACTS AND PROCEDURAL HISTORY
 

 The facts are taken from this Court’s opinions in Taylor’s direct appeals.
 

 Taylor was charged with the murder and sexual battery of Geraldine Birch whose severely beaten body was found in a dugout at a little league baseball field. Shoe prints matching Taylor’s shoes were found at the scene. Taylor confessed to killing Birch but claimed that the sexual contact was consensual and that the beating from which she died was done in a rage without premeditation. Taylor testified that on the night of the killing, he was standing with a small group of people when Birch walked up. She talked briefly with others in the group and then all but Taylor and a friend walked off. Taylor testified that as he began to walk away, Birch called to him and told him she was trying to get to Sulphur Springs. He told her he did not have a car. She then offered sex in exchange for cocaine and money. Taylor agreed to give her ten dollars in exchange for sex, and the two of them went to the dugout.
 

 Taylor testified that when he and Birch reached the dugout they attempted to have vaginal intercourse for less than a minute. She ended the attempt at intercourse and began performing oral sex on him. According to Taylor, he complained that her teeth were irritating him and attempted to pull away. She bit down on his penis. He choked her in an attempt to get her to release him. After he succeeded in getting her to release her bite, he struck and kicked her several times in anger.
 

 Taylor v. State,
 
 583 So.2d 323, 325 (Fla.1991) (footnote omitted). “The jury convicted Taylor on both counts. Upon the jury’s unanimous recommendation, the trial judge sentenced Taylor to death.”
 
 Id.
 

 On direct appeal, Taylor raised three issues related to the guilt phase of his trial.
 
 Id.
 
 at 326. First, that the trial court erred by failing to conduct an inquiry pursuant to
 
 State v. Neil,
 
 457 So.2d 481 (Fla.1984), on the State’s peremptory challenge of a black prospective juror.
 
 Taylor,
 
 583 So.2d at 326. Second, that the trial court erred in excluding testimony that the victim had used crack cocaine.
 
 Id.
 
 at 328.
 
 *991
 
 Third, that the trial court erred in denying his motion for judgment of acquittal because the State’s circumstantial case was legally insufficient to prove sexual battery and premeditation.
 
 Id.
 
 We rejected these claims and affirmed Taylor’s convictions.
 

 Additionally, Taylor raised three issues related to the penalty phase of his trial, but we addressed only one.
 
 Id.
 
 at 329. We concluded that the prosecution overstepped the bounds of proper argument and we vacated Taylor’s sentence and remanded for resentencing.
 
 Id.
 
 at 330.
 

 At resentencing the jury again recommended death:
 

 The new jury recommended death by an eight to four vote. The judge found the following aggravating factors: (1) Taylor had a previous felony conviction involving the use or threat of violence; (2) the capital felony occurred during the commission of a sexual battery; and (3) the capital felony was especially heinous, atrocious, or cruel. The court found no statutory mitigators but did give some weight to Taylor’s deprived family background and the abuse he was reported to have suffered as a child. The court considered but gave little weight to Taylor’s remorse, to psychological testimony that while Taylor has above-average intelligence, he suffers from an organic brain injury, and to testimony concerning Taylor’s good conduct in custody. The judge determined that the aggravating circumstances outweighed the mitigating factors and sentenced Taylor to death.
 

 Taylor v. State,
 
 638 So.2d 30, 31-32 (Fla.1994). Upon review we affirmed Taylor’s conviction and sentence.
 
 Id.
 
 at 33.
 

 Thereafter, Taylor filed a postconviction motion to vacate his judgments of conviction and sentence on March 12, 1996. The trial court held hearings pursuant to
 
 Huff v. State,
 
 622 So.2d 982 (Fla.1993), on November 26, 1998, and April 8, 2005. Evi-dentiary hearings were ordered on two of the claims set out in Taylor’s third amended motion to vacate judgments of conviction and sentence and the trial court later issued an order denying all relief.
 

 At the evidentiary hearings held on October 7, 2003, June 7, 2004, June 8, 2004, and March 3, 2005, testimony was heard from Mike Benito, the prosecutor at Taylor’s trial; James McNally, Taylor’s childhood social worker; Judge Manuel Lopez, penalty phase counsel; Nick Sinardi, trial counsel; Bill Brown, defense trial investigator; Dr. Ronald Wright, forensic pathologist; Dr. Catherine Lynch, obstetrician-gynecologist; Dr. Donald Taylor, adult psychiatrist; Dr. Henry Dee, clinical neu-ropsychologist; Stanley Graham, Taylor’s brother; Edwina Graham, Taylor’s mother; Charles Kelly, a jail deputy who had been physically assaulted by Taylor; Howard Ury, who had been a foster child in the same home as Taylor; Dr. Frank Wood, head of neuropsychology at Wake Forest; Dr. William Mosman, forensic psychologist; Dr. Lee Miller, medical examiner; Robert Norgard, mitigation expert; Dr. Jon Kotler, PET scan interpreter; and Dr. Helen Mayberg, PET scan interpreter.
 

 In its sixty-nine page order denying relief, the trial court comprehensively treated each of Taylor’s twenty-one claims.
 
 [1]
 
 This appeal follows.
 

 
 *992
 
 DISCUSSION
 

 On appeal from the denial of rule 3.850 relief, Taylor first contends that the trial court erred in denying his claims of newly discovered evidence, ineffective assistance of counsel, and his
 
 Brady
 
 and
 
 Giglio
 
 claims.
 

 DR. MILLER’S TESTIMONY
 

 Taylor raised multiple claims concerning Dr. Miller’s trial testimony concerning the extensive injuries suffered by the victim. The trial court addressed these claims together, finding Taylor’s allegations of recantation by Miller as to the victim’s sexual injuries to be an inaccurate characterization of Miller’s testimony. The trial court denied these claims, finding no newly discovered evidence, that trial counsel was not deficient, and that any possible deficiencies did not have the cumulative effect of denying Taylor a fair trial.
 

 At trial, Dr. Miller testified that the injuries to the victim’s vagina were, within a reasonable degree of medical probability, caused by something “inserted into the vagina which stretched the vagina enough for it to tear over the object that was inserted in there.” Dr. Miller further testified that the injuries were inconsistent with someone having kicked the victim. Relying on this evidence, we noted on review that “the medical examiner’s testimony contradicted Taylor’s version of what happened.... The medical examiner testified that the extensive injuries to the interior and exterior of the victim’s vagina were caused by a hand or object other than a penis inserted into the vagina.”
 
 Taylor,
 
 583 So.2d at 329.
 

 At the postconviction evidentiary hearing, Dr. Miller testified that the injuries sustained were mostly confined to the labia minora and radiated inward, while some were inside the labia minora in “what anyone would describe as the vaginal canal.” However, Dr. Miller further testified that the injuries could possibly have been the result of a kick if the blow had been struck where the toe of the shoe actually went into the vagina, stretching it, that any shoe would have been able to penetrate the victim’s vagina due to extraversión, but that ultimately the injuries were caused by stretching and not direct impact. Miller testified that the possibility of a kick causing the injury was “a one in a million shot” and that his opinions as expressed at trial had not changed. He attributed any differences in his testimony to differences in the questions being asked and, in some instances more elaboration in exploring possibilities. Taylor contends that had Miller’s testimony about a kick possibly causing the vaginal injuries been presented at trial he could not have been convicted of sexual battery or felony murder. Taylor alleges that (1) this is new evidence that requires a new trial, (2) the State withheld this evidence, (3) the State allowed Dr. Miller to present false testimony, or (4) his trial counsel was deficient for
 
 *993
 
 not having discovered this evidence before trial.
 

 Newly Discovered Evidence
 

 In ruling on this issue, the trial court found Taylor’s claim of a “supposed recantation” by Dr. Miller of his trial testimony was “not an accurate statement of [Dr. Miller’s] testimony.” Hence, the trial court concluded Taylor had not actually established the existence of important new evidence of his innocence of sexual battery. We agree.
 

 To obtain a new trial based on newly discovered evidence, Taylor must meet two requirements: first, the evidence must be newly discovered and not have been known by the party or counsel at the time of trial, and the defendant or defense counsel could not have known of it by the use of diligence; second, the newly discovered evidence must be of such quality and nature that it would probably produce an acquittal on retrial.
 
 See Jones v. State,
 
 709 So.2d 512, 521 (Fla.1998) (citing
 
 Jones v. State,
 
 591 So.2d 911, 915 (Fla.1991)). In determining whether the evidence compels a new trial, the trial court must “consider all newly discovered evidence which would be admissible,” and must “evaluate the weight of both the newly discovered evidence and the evidence which was introduced at the trial.”
 
 Jones,
 
 591 So.2d at 916. This determination includes
 

 whether the evidence goes to the merits of the case or whether it constitutes impeachment evidence. The trial court should also determine whether the evidence is cumulative to other evidence in the case. The trial court should further consider the materiality and relevancy of the evidence and any inconsistencies in the newly discovered evidence.
 

 Jones,
 
 709 So.2d at 521 (citations omitted). As noted above, the second prong of
 
 Jones
 
 requires a showing of the probability of an acquittal on retrial.
 

 On review, “[t]his Court does not substitute its judgment for that of the trial court on issues of fact when competent, substantial evidence supports the circuit court’s factual findings.”
 
 Smith v. State,
 
 931 So.2d 790, 803 (Fla.2006) (citing
 
 Windom v. State,
 
 886 So.2d 915, 921 (Fla.2004));
 
 see also Blanco v. State,
 
 702 So.2d 1250, 1252 (Fla.1997) (citing
 
 Demps v. State,
 
 462 So.2d 1074, 1075 (Fla.1984)). In essence, the postconviction court concluded that, at trial, Dr. Miller testified that the lacerations were not, within reasonable medical probability, caused by a kick. Similarly, at the evidentiary hearing, Dr. Miller testified that it was his opinion that there was only a one-in-a-million chance that the lacerations could have been caused by a kick. Hence, because the record refutes Taylor’s contrary interpretation of the testimony, Taylor fails to show that Miller’s postconviction testimony qualifies as newly discovered evidence. While it is true that Miller’s trial testimony did not admit to this one-in-a-million possibility, we find this omission insufficient to overturn the trial court’s conclusion that sufficient “new evidence” had not been established.
 

 Additionally, we note the jury was not instructed to and did not differentiate between first-degree premeditated murder and first-degree felony murder in determining Taylor’s guilt. There is no indication that Taylor was convicted of first-degree murder predicated solely upon the felony of sexual battery. This Court previously detailed the massive injuries sustained by the victim to support the State’s alternative theories of premeditation and felony murder:
 

 [T]he jury reasonably could have rejected as untruthful Taylor’s testimony that he beat the victim in a rage after she injured him. Although Taylor claimed that the victim bit his penis, an examina
 
 *994
 
 tion did not reveal injuries consistent with a bite. According to Taylor, even after he sufficiently incapacitated the victim by choking her so that she released her bite on him, he continued to beat and kick her. The medical examiner testified that the victim sustained a minimum of ten massive blows to her head, neck, chest, and abdomen. Virtually all of her internal organs were damaged. Her brain was bleeding. Her larynx was fractured. Her heart was torn. Her liver was reduced to pulp. Her kidneys and intestines were torn from their attachments. Her lungs were bruised and torn. Nearly all of the ribs on both sides were broken. Her spleen was torn. She had a bite mark on her arm and patches of her hair were torn off. Her face, chest, and stomach were scraped and bruised. Although Taylor denied dragging the victim, evidence showed that she had been dragged from one end of the dugout to the other. The evidence was sufficient to submit the question of premeditation to the jury.
 

 Taylor,
 
 583 So.2d at 329.
 

 Accordingly, even if Dr. Miller’s alleged change in testimony were considered sufficient to call into question Taylor’s sexual battery conviction, it would not be sufficient to outweigh the evidence that Taylor committed premeditated murder or to cast doubt on his conviction for first-degree murder based upon premeditation. Ultimately, then, even if we were to construe Dr. Miller’s testimony at the evidentiary hearing the way Taylor seeks, there remains an abundance of evidence the jury could have used to convict Taylor of premeditated first-degree murder. Hence, we conclude the trial court did not err in denying this claim.
 

 Giglio/Brady
 

 In addition to the claim of newly discovered evidence arising from Dr. Miller’s testimony, Taylor asserts that the trial court erred in denying his claim that through Miller’s testimony the State intentionally permitted false or misleading evidence to be presented to the jury in violation of
 
 Giglio
 
 (where the United States Supreme Court held it to be a violation of due process when a prosecutor failed to disclose to the defense a promise made by the prosecution to a key witness that he would not be prosecuted if he testified for the prosecution). Finding there was no change in Dr. Miller’s testimony, the trial court denied this claim. We conclude that the trial court properly denied Taylor’s claim because it is refuted by the record.
 

 To prevail under
 
 Giglio,
 
 a claimant must show that false testimony was presented by the State and that there is a reasonable possibility that the false evidence affected the judgment of the jury.
 
 See Ventura v. State,
 
 794 So.2d 553, 564-65 (Fla.2001) (holding that a witness’s testimony was not material under
 
 Giglio
 
 where the witness was significantly impeached);
 
 Routly v. State,
 
 590 So.2d 397, 400-01 (Fla.1991) (finding that an equivocal statement did not have a reasonable probability of affecting the judgment of the jury).
 

 Taylor alleges that Dr. Miller’s trial testimony was false because it was contradicted by his testimony at the evidentiary hearing. As the trial court concluded, the record does not support this allegation. Dr. Miller’s testimony did not materially change. When the trial court finds that the testimony is not false, and there is competent substantial evidence to support that finding, we defer to the trial court’s findings. Accordingly, Taylor has not shown cause for relief under
 
 Giglio.
 

 Alternatively, Taylor asserts that the State withheld material, favorable information in violation of
 
 Brady. Brady
 
 requires the State to disclose material in
 
 *995
 
 formation within its possession or control that is favorable to the defense.
 
 Mordenti v. State,
 
 894 So.2d 161, 168 (Fla.2004) (citing G
 
 uzman v. State,
 
 868 So.2d 498, 508 (Fla.2003)). To establish a
 
 Brady
 
 violation, the defendant has the burden to show (1) that favorable evidence, (2) was willfully or inadvertently suppressed by the State, and (3) because the evidence was material, the defendant was prejudiced.
 
 Strickler v. Greene,
 
 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999);
 
 Cardona v. State,
 
 826 So.2d 968, 973 (Fla.2002);
 
 Way v. State,
 
 760 So.2d 903, 910 (Fla.2000). The remedy of retrial for the State’s suppression of evidence favorable to the defense is available when “the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.”
 
 Strickler,
 
 527 U.S. at 290, 119 S.Ct. 1936 (quoting
 
 Kyles v. Whitley,
 
 514 U.S. 419, 435, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)).
 

 Here, however, the trial court has concluded, and we agree, that neither the State nor its actors suppressed evidence. Because the trial court has concluded that Dr. Miller’s testimony is unchanged, there is nothing the State has been demonstrated to have suppressed.
 

 INEFFECTIVE ASSISTANCE OF COUNSEL
 

 Taylor raised multiple claims of ineffective assistance of defense counsel stemming from his representation at trial and both penalty phases. Taylor also alleged ineffective assistance in the alternative should the court determine any of his other claims insufficient for lack of due diligence by counsel. In addressing these claims, the trial court found that Taylor failed to demonstrate deficiency or any resulting prejudice, the two prongs of
 
 Strickland v. Washington,
 
 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). We agree.
 

 We have held that for ineffective assistance of counsel claims to be successful, the two requirements of
 
 Strickland
 
 must be satisfied:
 

 First, the claimant must identify particular acts or omissions of the lawyer that are shown to be outside the broad range of reasonably competent performance under prevailing professional standards. Second, the clear, substantial deficiency shown must further be demonstrated to have so affected the fairness and reliability of the proceeding that confidence in the outcome is undermined. A court considering a claim of ineffectiveness of counsel need not make a specific ruling on the performance component of the test when it is clear that the prejudice component is not satisfied.
 

 Maxwell v. Wainwright,
 
 490 So.2d 927, 932 (Fla.1986) (citations omitted). To prove the deficiency prong under
 
 Strickland,
 
 Taylor must prove that counsel’s performance was unreasonable under the “prevailing professional norms.”
 
 Morris v. State,
 
 931 So.2d 821, 828 (Fla.2006) (quoting
 
 Strickland,
 
 466 U.S. at 688, 104 S.Ct. 2052). “To establish the [prejudice] prong under
 
 Strickland,
 
 the defendant must show that ‘there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.’”
 
 Id.
 
 (quoting
 
 Strickland,
 
 466 U.S. at 694, 104 S.Ct. 2052).
 

 Failure to Perform Due Diligence
 

 Taylor asserts this ineffectiveness argument in the alternative for his newly discovered evidence claims relating to Dr. Miller’s testimony. Taylor alleges that should this Court find that any evidence could have been discovered at trial, then trial counsel was deficient for failure to discover said evidence. As discussed
 
 *996
 
 above with Dr. Miller’s testimony, and below with Taylor’s other claims, we conclude there was no material new evidence presented during these proceedings. Further, unlike the situation in
 
 State v. Gunsby,
 
 670 So.2d 920 (Fla.1996), upon which Taylor relies, the State has not been shown to have withheld evidence, and trial counsel has not been found to have failed to object to abuses by the State.
 
 See id.
 
 at 922-24. Each of Taylor’s claims of newly discovered evidence is sufficiently refuted by the trial and postconviction record. None of them fail for counsel’s lack of diligence. For example, we find there has been no demonstration of ineffectiveness under
 
 Strickland
 
 as to counsel’s alleged failure to elicit Dr. Miller’s “one in a million” testimony at trial. Accordingly, we reject Taylor’s claim that counsel’s performance was deficient.
 

 Failure to Prepare Taylor to Testify
 

 Contrary to Taylor’s assertion below, and now on appeal, trial defense counsel, Nick Sinardi, testified that he did prepare Taylor to testify, and his trial strategy was to show that Taylor did not have the intent to murder the victim. Si-nardi testified that he believed it was in Taylor’s best interest to take the stand in order for the jury to evaluate his defense. Further, although Sinardi testified that he did not rehearse Taylor’s testimony, he did tell Taylor to testify truthfully. Because Taylor had given a detailed confession, defense counsel felt he was limited in available strategies.
 

 After hearing defense counsel’s testimony, the trial court found that Taylor failed to demonstrate any deficiency or resulting prejudice from the performance of guilt phase counsel. Further, the trial court found that Sinardi made reasonable tactical decisions under the circumstances he faced and with the limited choices available.
 

 In
 
 Zack v. State,
 
 911 So.2d 1190 (Fla.2005), this Court rejected a similar claim:
 

 Zack argue[d] that trial counsel failed to adequately prepare him to testify at trial and failed to inform him about what would occur during cross-examination. Zack contend[ed] that had he been adequately prepared and informed of the hazards of cross-examination, he would not have testified. Zack stated that trial counsel gave him no choice but to testify, and that he was only told that he was going to testify after trial began.
 

 Id.
 
 at 1198. The trial court found that Zack had testified on his own behalf at trial to give his version of events even on cross-examination.
 
 Id.
 
 at 1199. The trial court further found that Zack showed a desire to explain himself on cross-examination, and that Zack failed to show either that counsel failed to prepare him or that he suffered any prejudice.
 
 Id.
 
 at 1199-1200. This Court accepted the trial court’s findings.
 
 Id.
 

 This Court has also held that trial counsel cannot be deemed ineffective simply because postconviction counsel now disagrees with trial counsel’s strategy or because there were other choices.
 
 See Davis v. State,
 
 875 So.2d 359, 366 (Fla.2003) (citing
 
 Occhicone v. State,
 
 768 So.2d 1037, 1048 (Fla.2000));
 
 see also Henry v. State,
 
 862 So.2d 679, 681-82 (Fla.2003) (ineffective assistance claims for reliance on theories of self-defense and diminished capacity failed because they were conclusively refuted by the record).
 

 On the record before us, we conclude that Taylor, like Zack, has not shown that he testified against his will, nor has he met the burden to demonstrate that Sinardi’s strategy was unreasonable under the circumstances, especially considering the limited choices available to the defense. Because we agree with the trial court that Taylor has failed to demonstrate deficient
 
 *997
 
 performance, we need not address prejudice.
 
 See, e.g., Waterhouse v. State,
 
 792 So.2d 1176, 1182 (Fla.2001) (because
 
 Strickland
 
 requires both prongs, it is not necessary to address prejudice when a deficient performance has not been shown).
 

 Failure to Investigate and Present Mental Health Issues
 

 Taylor claimed below that defense counsel failed to demand a hearing on Taylor’s competency or present evidence of Taylor’s mental health problems. However, Sinardi testified at the postconviction hearing that he did not feel there was any reason to question Taylor’s competence. The trial court found that Taylor did receive a competent mental health evaluation at trial, and he did not prove that his counsel’s investigation of this issue was deficient.
 

 Taylor cites
 
 Futch v. Dugger,
 
 874 F.2d 1483 (11th Cir.1989), to support his claim. In
 
 Futch,
 
 the Eleventh Circuit considered a habeas petition brought by a defendant convicted of second-degree murder.
 
 Id.
 
 at 1484. The court stated, “In order to demonstrate prejudice from counsel’s failure to investigate his competency, petitioner has to show that there exists ‘at least a reasonable probability that a psychological evaluation would have revealed that he was incompetent to stand trial.’ ”
 
 Id.
 
 at 1487 (quoting
 
 Alexander v. Dugger,
 
 841 F.2d 871, 375 (11th Cir.1988)). The court stated that if Futch was correct in his allegation that a prison psychologist evaluated him and found him incompetent and that trial counsel was aware of this finding, Futch met this burden.
 
 Id.
 
 The Eleventh Circuit remanded for evidentiary hearing on this issue.
 
 Id.
 
 at 1488.
 

 Unlike the petitioner in
 
 Futch,
 
 however, Taylor has had an evidentiary hearing on this claim. And, unlike Futch, Taylor has never been declared incompetent by any of the psychologists and neuropsychologists who have examined him. Despite Taylor’s reading of this case, the Eleventh Circuit did not mandate that trial counsel investigate a defendant’s competency without some cause. Instead, in
 
 Futch,
 
 the petitioner specifically alleged that although counsel had substantial reason to suspect petitioner’s competency, he still failed to investigate.
 
 Id.
 
 at 1487. We conclude that the trial court did not err in holding Taylor has not demonstrated deficiency of his trial counsel in regard to counsel’s investigation of any mental health issues.
 

 Failure to Investigate and Present Mitigation
 

 Taylor asserts that there were more mitigating factors that could have been presented that counsel, Manuel Lopez, failed to present, but does not specify what these factors could be. Instead, Taylor attempts to demonstrate counsel’s ineffectiveness by focusing solely on the number of hours Lopez spent preparing for resentencing.
 

 We have held:
 

 “An attorney has a duty to conduct a reasonable investigation, including an investigation of the defendant’s background, for possible mitigating evidence.”
 
 Porter v. Singletary,
 
 14
 
 F.3d
 
 554, 557 (11th Cir.),
 
 cert. denied,
 
 513 U.S. 1009, 115 S.Ct. 532, 130 L.Ed.2d 435 (1994). The failure to do so “may render counsel’s assistance ineffective.”
 
 Bolender [v. Singletary],
 
 16 F.3d [1547,] 1557 [ (11th Cir.1994) ].
 

 Rose v. State,
 
 675 So.2d 567, 571 (Fla.1996). In
 
 Rose,
 
 we found counsel was ineffective where counsel made practically no investigation, and Rose was able to demonstrate substantial mitigation that counsel failed to uncover and present.
 
 Id.
 
 at 572. The record demonstrated that counsel was inexperienced, and this Court held that his uninformed decision did not amount to strategy.
 
 Id.
 
 Likewise, in
 
 Hildwin v. Dugger,
 
 654 So.2d 107 (Fla.1995),
 
 *998
 
 the petitioner also was able to demonstrate mitigation that trial counsel failed to uncover.
 
 Id.
 
 at 110.
 

 The trial court found, and we conclude, that trial counsel’s performance at sentencing was deficient. Trial counsel’s sentencing investigation was woefully inadequate. As a consequence, trial counsel failed to unearth a large amount of mitigating evidence which could have been presented at sentencing. For example, trial counsel was not even aware of Hildwin’s psychiatric hospitalizations and suicide attempts.
 

 Id.
 
 at 109.
 

 However,
 
 “Strickland
 
 does not require counsel to investigate every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant at sentencing.”
 
 Wiggins v. Smith,
 
 539 U.S. 510, 533, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). “Rather, in deciding whether trial counsel exercised reasonable professional judgment with regard to the investigation and presentation of mitigation evidence, a reviewing court must focus on whether the investigation resulting in counsel’s decision not to introduce certain mitigation evidence was itself reasonable.”
 
 Ferrell v. State,
 
 918 So.2d 163, 170 (Fla.2005) (citing
 
 Wiggins,
 
 539 U.S. at 523, 123 S.Ct. 2527;
 
 Strickland,
 
 466 U.S. at 690-91, 104 S.Ct. 2052). “When making this assessment, ‘a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further.’ ”
 
 Ferrell,
 
 918 So.2d at 170 (quoting
 
 Wiggins,
 
 539 U.S. at 527, 123 S.Ct. 2527). Ultimately, in
 
 Ferrell,
 
 we agreed with the trial court’s assessment that trial counsel was not deficient, stating that this was not a case where counsel presented no mitigation, nor a case where counsel made no attempt to investigate.
 
 Id.
 
 at 171 (citing
 
 Torres-Arboleda v. Dugger,
 
 636 So.2d 1321, 1326 (Fla.1994)).
 

 The record shows this is not a case where trial counsel failed to investigate and present available mitigating evidence.
 
 Cf. Rose,
 
 675 So.2d at 571-72. The trial court’s findings of mitigation directly refute such a claim. Taylor does not allege that counsel made no attempt to investigate mitigation or that he failed to present something he otherwise uncovered. Importantly, Taylor makes no specific allegation of what mitigation could have been presented that counsel failed to present. Under these circumstances, we conclude Taylor has shown no error in the trial court’s holding that Taylor has failed to demonstrate that counsel was deficient. Accordingly, the Court need not address prejudice.
 
 See, e.g., Waterhouse,
 
 792 So.2d at 1182.
 

 NEWLY DISCOVERED EVIDENCE
 

 PET Scan
 

 Taylor argues that a PET Scan is newly discovered evidence that shows brain damage. However, in the prior sentencing proceedings the trial court found Taylor’s brain damage was established as a mitigating factor, and gave it little weight. Taylor’s argument resembles that rejected by this Court in
 
 Ferrell,
 
 stating
 

 In fact, a capital cases defense manual prepared by the Florida Public Defender’s Association and distributed in 1992 did not mention either PET or SPECT scans in a list of medical tests used to confirm brain damage. Furthermore, the manual cautioned that even the listed medical tests could be unreliable and did not always indicate organic brain damage. Instead, the manual stated that neuropsychological testing was actually more reliable in showing such deficits.
 

 
 *999
 
 918 So.2d at 175 n. 11. In denying this claim, the trial court relied on
 
 Fen-ell
 
 and also noted that the testimony of two experts who interpreted the scan showed that the scan did not represent a significant indication of brain damage. As in
 
 Fen-ell,
 
 Taylor has not demonstrated that a PET scan would have been available to counsel or even admissible at Taylor’s prior trial. Further, in light of the trial court’s findings, Taylor has also failed to demonstrate that if the scan had been prepared, it would have affected the outcome of Taylor’s penalty phase, since the sentencing court did consider proof of brain damage in mitigation. Accordingly, we conclude the trial court properly rejected this claim.
 

 Sonya Davis
 

 The trial court denied Taylor’s claim that trial counsel was ineffective for failing to present the testimony of the victim’s daughter, Sonya Davis, because the record “clearly shows Ms. Davis would not have been willing to testify in the prior proceedings.” Additionally, the trial court denied the claim for being untimely since the evidence of Ms. Davis was known at trial. The trial court denied admission of Davis’s deposition because the deposition would not have been admissible at trial and because the postconviction claim allegedly supported by the deposition was untimely asserted. None of these findings have been demonstrated to have been erroneous.
 

 The summary denial of a newly discovered evidence claim will be upheld if the motion is legally insufficient or its allegations are conclusively refuted by the record.
 
 McLin v. State,
 
 827 So.2d 948, 954 (Fla.2002). It is evident from the record that Taylor was aware of Davis’s existence prior to the trial, and that Davis would have been unwilling to testify for Taylor. Additionally, as the State correctly points out, even if Taylor had succeeded in introducing this evidence, it would have served to impeach his own testimony and to impugn his theory of defense.
 
 Cf. Antone v. State,
 
 410 So.2d 157, 162 (Fla.1982) (holding that newly discovered evidence that would have impeached defendant’s testimony and changed totally his theory of defense did not meet the test that the alleged facts must be of such a vital nature that they would have prevented entry of the judgment). Accordingly, the trial court properly denied this claim.
 

 PETITION FOR HABEAS CORPUS
 

 In his petition for habeas corpus, Taylor argues that his death sentence is unconstitutional under
 
 Johnson v. Mississippi,
 
 486 U.S. 578, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988), and
 
 Richmond v. Lewis,
 
 506 U.S. 40, 113 S.Ct. 528, 121 L.Ed.2d 411 (1992); that the jury instructions unconstitutionally diminished the jury’s sense of responsibility; and that Florida’s capital sentencing statute constitutes cruel and unusual punishment. We reject each of these claims on the merits. Further, we note that Taylor’s constitutional claims are procedurally barred because they were not preserved on direct appeal.
 

 Taylor argues that his prior violent felony aggravator was invalid because his conviction for sexual battery in 1982 was unconstitutional because his then deficient mental state prevented him from making a knowing, intelligent, and voluntary waiver of his right to trial in entering a plea of nolo contendere. He further argues that this 1982 conviction was too remote in time to qualify as an aggravator.
 

 In
 
 Nixon v. State,
 
 932 So.2d 1009, 1023 (Fla.2006), we refused to grant relief where the allegedly unlawful prior felony convictions had not been vacated and were still valid. Nixon was convicted of and received a death sentence for first-degree murder, kidnapping, and other crimes.
 
 Id.
 
 
 *1000
 
 On appeal, he argued that the prior felonies used to support the prior felony ag-gravator in his case were invalid.
 
 Id.
 
 We held that because no court had vacated the prior convictions,
 
 Johnson
 
 did not apply.
 
 Id.
 
 The invalid conviction at issue in
 
 Johnson
 
 had been reversed by the New York Court of Appeals.
 
 Johnson,
 
 486 U.S. at 583, 108 S.Ct. 1981. Taylor’s conviction has not been vacated by any court. Accordingly, his claim under
 
 Johnson
 
 must fail. We also reject Taylor’s argument that the prior conviction is too remote in time, since we have held a conviction obtained thirty-two years prior to the crime in question is not too remote to be considered a valid aggravating factor.
 
 Thompson v. State,
 
 553 So.2d 153, 156 (Fla.1989).
 

 Taylor’s claim as to the invalidity of Florida’s heinous, atrocious and cruel aggravator is proeedurally barred. Taylor cannot relitigate the merits of an issue through a habeas petition or use an ineffective assistance claim to argue the merits of claims that either were or should have been raised below.
 
 See Preston v. State,
 
 970 So.2d 789, 805 (Fla.2007);
 
 Knight v. State,
 
 923 So.2d 387, 395 (Fla.2005). “It is important to note that habeas corpus petitions are not to be used for additional appeals on questions which could have been, should have been, or were raised on appeal or in a rule 3.850 motion, or on matters that were not objected to at trial.”
 
 Parker v. Dugger,
 
 550 So.2d 459, 460 (Fla.1989). We rejected a similar argument in
 
 Doyle v. Singletary,
 
 655 So.2d 1120, 1121 (Fla.1995) (holding that Doyle’s claim was proeedurally barred because Doyle had failed to pursue the issue on appeal). As in
 
 Doyle,
 
 Taylor did not raise this claim on direct appeal and we now reject this habe-as claim for the same reason.
 
 [2]
 

 CONCLUSION
 

 In light of the above analysis, we affirm the trial court’s denial of Taylor’s postcon-viction motion and deny Taylor’s petition for writ of habeas corpus.
 

 It is so ordered.
 

 WELLS, PARIENTE, LEWIS, and CANADY, JJ., and ANSTEAD, Senior Justice, concur.
 

 QUINCE, C.J., recused.
 

 POLSTON, J., did not participate.
 

 [1]
 

 . Taylor’s postconviction claims were: (1) no trial transcript had been provided; (2) his statements were admitted in error; (3) there was prosecutorial misconduct; (4) he was absent from critical proceedings; (5) there were violations of
 
 Brady v. Maryland,
 
 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and
 
 Giglio v. United States,
 
 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), and ineffective assistance of counsel; (6) the State failed to prove corpus delicti; (7) counsel was ineffec
 
 *992
 
 tive for failure to obtain a mental health evaluation; (8) Taylor's right to confront witnesses was violated; (9) the prosecutor made improper statements; (10) defense counsel failed to obtain a mental health expert; (11) there was ineffective assistance of counsel in other respects; (12) the death sentence is disproportionate; (13) the sexual battery ag-gravator is unconstitutional; (14) the prior conviction record admitted was obtained illegally; (15) the aggravating factors statute is unconstitutional; (16) the jury instructions were unconstitutional; (17) the death sentence was unconstitutional; (18) Florida’s capital sentencing statute is unconstitutional; (19) Taylor's rights under
 
 Ake v. Oklahoma,
 
 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), were violated; (20) numerous trial and resentencing errors deprived Taylor of his rights; and (21)Taylor was denied due process.
 

 [2]
 

 . The lower court instructed the sentencing jury with then-standard instructions for the "heinous, atrocious, or cruel” aggravating factor. Taylor did not challenge the standard jury instructions at trial or on direct appeal. The United States Supreme Court later declared Florida’s standard jury instructions for the "heinous, atrocious, or cruel” aggravating factor unconstitutionally vague in
 
 Espinosa v. Florida,
 
 505 U.S. 1079, 1081, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992). However, even though Taylor's resentencing occurred prior to the
 
 Espinosa
 
 decision, the jury instructions used were not those involved in
 
 Espinosa
 
 but were the same as this Court found constitutional in
 
 Hall v. State,
 
 614 So.2d 473, 478 (Fla.1993).