CANADY, J., specially concurring.
I concur in the denial of Taylor's newly discovered evidence claim and ineffective assistance of trial counsel claims. I also agree that Taylor is not entitled to postconviction relief on his Hurst v. Florida , --- U.S. ----, 136 S.Ct. 616, 193 L.Ed.2d 504 (2016), and Hurst v. State , 202 So.3d 40 (Fla. 2016) -related claims and that the successive motion for postconviction relief should therefore be denied. But I would not rely on Hurst v. State and its progeny. Instead, I would deny the Hurst -related claims on two grounds. First, no *241 Hurst v. Florida error occurred in this case because the aggravating factor that the capital felony occurred during the commission of a sexual battery was established by the sexual battery conviction. See Hurst v. State , 202 So.3d at 77-83 (Canady, J., dissenting).[6] Second, in any event Hurst v. Florida should not be given retroactive application. See Mosley v. State , 209 So.3d 1248, 1285-91 (Fla. 2016) (Canady, J., concurring in part and dissenting in part).
POLSTON, J., concurs.
PARIENTE, J., concurring in result.
Taylor was sentenced to death based on a jury's nonunanimous recommendation for death by a vote of eight to four. Taylor v. State , 638 So.2d 30, 31 (Fla. 1994). To not apply Hurst[7] in Taylor's case results in Taylor being sentenced to death under an unconstitutional sentencing scheme. As I explained in Asay V :[8]
I conclude that Hurst should apply to all defendants who were sentenced to death under Florida's prior, unconstitutional capital sentencing scheme. The majority's [retroactivity] conclusion results in an unintended arbitrariness as to who receives relief depending on when the defendant was sentenced or, in some cases, resentenced. For example, many defendants whose crimes were committed before 2002 will receive the benefit of Hurst because they were previously granted a resentencing on other grounds and their newest death sentence was not final when Ring was decided. To avoid such arbitrariness and to ensure uniformity and fundamental fairness in Florida's capital sentencing, our opinion in Hurst should be applied retroactively to all death sentences.
210 So.3d at 36 (Pariente, J., concurring in part and dissenting in part) (footnote omitted).
I also note that on direct appeal in 1993, Taylor, like other defendants sentenced to death before Ring v. Arizona , 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002),[9] argued that Florida's capital sentencing statute was unconstitutional, stating:
To the extent that Florida's death penalty scheme allows a death recommendation, which has a crucial and often dispositive impact on the resulting death sentence, to be returned by a bare majority vote of the jury, it violates the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.
Not only does the Florida procedure fail to require jury unanimity ... to return a death recommendation; it also fails to require unanimous ... agreement as to whether a particular aggravating circumstance has been proven beyond a reasonable doubt, or even as to whether any aggravating circumstance has been proven beyond a reasonable doubt. The United States Supreme Court has repeatedly recognized that the Eighth and Fourteenth Amendments require a heightened degree of *242 reliability when a death sentence is imposed. Florida's capital sentencing scheme ... works in the opposite direction.
Initial Br. of Appellant, Taylor v. State , No. 80,121 (Fla. July 6, 1993), at 33-34 (footnote omitted) (citations omitted). Of course, we have now determined that the United States and Florida Constitutions require that these precise findings be made by a unanimous jury before a death sentence can be imposed. Hurst , 202 So.3d at 44. As I stated in Hurst : "If 'death is different,' as this Court and the United States Supreme Court have repeatedly pronounced, then requiring unanimity in the jury's final recommendation of life or death is an essential prerequisite to the continued constitutionality of the death penalty in this State." 202 So.3d at 70 (Pariente, J., concurring) (footnote omitted) (quoting Yacob v. State , 136 So.3d 539, 546 (Fla. 2014) ).
Applying Hurst in this case, I would grant Taylor a new penalty phase based on the jury's nonunanimous recommendation for death. See Mosley v. State , 209 So.3d 1248, 1284 (Fla. 2016) ; see also Reynolds v. State , --- So.3d ----, ----, 43 Fla. L. Weekly S163, S169-71 (Fla. Apr. 5, 2018) (Pariente, J., dissenting). Nevertheless, recognizing that I am bound by this Court's opinions in Asay V and Hitchcock, which are final, I concur in result.
LEWIS, J., concurring in result.
I have repeatedly expressed my disagreement with this Court's Hurst retroactivity determinations,[10] and I do so again today. I recognize that the majority simply applies prior precedent but I again urge that we follow proper legal theory. I believe that defendants who properly preserved the substance of a Ring[11] challenge at trial and on direct appeal prior to that principle of law having a case name should also be entitled to have their constitutional challenges heard. Today the Court again looks the other way and denies relief to a pre- Ring defendant who raised-and thus preserved-a substantive Ring claim before it was so named. See Taylor v. State , 638 So.2d 30, 33 n.4 (Fla. 1994). For this reason, I dissent as to the Hurst retroactivity issue.
Preservation is perhaps the most basic tenet of appellate review, see Steinhorst v. State , 412 So.2d 332, 338 (Fla. 1982) ; and this Court should be particularly cognizant of preservation issues for capital defendants. Accordingly, the fact that some defendants specifically cited the name Ring while others did not is not dispositive, in my view. Rather, the proper inquiry centers on whether a defendant preserved his or her substantive constitutional claim to which and for which Hurst applies.[12] This preservation approach-enshrined in James v. State , 615 So.2d 668 (Fla. 1993) -ameliorates some of the majority's concern with the effect on the administration of justice. Defendants who did not properly preserve their constitutional challenges-through trial and direct appeal-forfeited them just as any other defendant who fails to raise and preserve a claim. However, *243 those defendants who, like Taylor, challenged Florida's unconstitutional sentencing scheme based on the substantive matters addressed in Hurst are entitled to consideration of that constitutional challenge.
Jurists have echoed this type of approach as a remedy to the more exacting federal Teague[13] standard.[14] Federal courts have employed a similar preservation approach, and it is "one of the dominant means by which federal courts limit the disruptive effects of legal change in the context of direct review of federal criminal convictions."[15] Regardless of the limited federal approach, scholars urge state courts to pull retroactivity off Teague 's constitutional floor,[16] which the United States Supreme Court expressly permitted in Danforth v. Minnesota , 552 U.S. 264, 280, 128 S.Ct. 1029, 169 L.Ed.2d 859 (2008).
This Court's adoption of the Stovall[17] / Linkletter[18] standard was intended to provide "more expansive retroactivity standards" than those of Teague . Johnson v. State , 904 So.2d 400, 409 (Fla. 2005). However, the Court's retroactivity decision post- Hurst eschews that intention. Further, it illuminates Justice Harlan's famous critique of Linkletter :
Simply fishing one case from the stream of appellate review ... and then permitting a stream of similar cases subsequently to flow by unaffected by that new rule constitute an indefensible departure from this model of judicial review.
Williams v. United States , 401 U.S. 646, 679, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971) (Harlan, J., concurring in part and dissenting in part). However, that is how the majority of this Court draws its determinative, albeit arbitrary, line. As a result, Florida will treat similarly situated defendants differently-here, the difference between life and death-for potentially the simple reason of one defendant's docket delay. Vindication of these constitutional rights cannot be reduced to either fatal or fortuitous accidents of timing.[19]
Every pre- Ring defendant has been found by a jury to have wrongfully murdered his or her victim. There may be defendants that properly preserved challenges to their unconstitutional sentences through trial and direct appeal, but this Court nonetheless chooses to limit the application of Hurst , which may result in the State wrongfully executing those defendants. It seems axiomatic that "two wrongs don't make a right"; yet this Court essentially condones that outcome with its very limited interpretation of Hurst 's retroactivity and application.
*244 For the reasons discussed above, I continue to respectfully dissent on the Hurst issue.

The requirement of Hurst v. Florida that the jury find an aggravator was also satisfied by the existence of the prior violent felony aggravator, which was established by Taylor's conviction "for sexual battery in 1982." See Taylor v. State , 3 So.3d 986, 999 (Fla. 2009).

Hurst v. State , 202 So.3d 40 (Fla. 2016), cert. denied , --- U.S. ----, 137 S.Ct. 2161, 198 L.Ed.2d 246 (2017) ; see Hurst v. Florida , --- U.S. ----, 136 S.Ct. 616, 193 L.Ed.2d 504 (2016).

Asay v. State (Asay V ), 210 So. 3d 1 (Fla. 2016), cert. denied , --- U.S. ----, 138 S.Ct. 41, 198 L.Ed.2d 769 (2017) ; see Hitchcock v. State , 226 So.3d 216, 220-23 (Fla.) (Pariente, J., dissenting), cert. denied , --- U.S. ----, 138 S.Ct. 513, 199 L.Ed.2d 396 (2017).

See, e.g. , Gaskin v. State , 218 So.3d 399, 401-05 (Fla.) (Pariente, J., concurring in part and dissenting in part), cert. denied , --- U.S. ----, 138 S.Ct. 471, 199 L.Ed.2d 362 (2017).

See State v. Silvia , 235 So.3d 349, 352, 356-57 (Fla. 2018) (Lewis, J., dissenting); Hitchcock v. State , 226 So.3d 216, 218-20 (Fla.) (Lewis, J., concurring in result), cert. denied , --- U.S. ----, 138 S.Ct. 513, 199 L.Ed.2d 396 (2017) ; Asay v. State , 210 So.3d 1, 30-31 (Fla. 2016) (Lewis, J., concurring in result), cert. denied , --- U.S. ----, 138 S.Ct. 41, 198 L.Ed.2d 769 (2017).

Ring v. Arizona , 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).

See L. Anita Richardson & Leonard B. Mandell, Fairness Over Fortuity: Retroactivity Revisited and Revised , 1989 Utah L. Rev. 11, 56-57 (1989).

Teague v. Lane , 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).

Tung Yin, A Better Mousetrap: Procedural Default as a Retroactivity Alternative to Teague v. Lane and the Antiterrorism and Effective Death Penalty Act of 1996 , 25 Am. J. Crim. L. 203, 232 (1998).

Toby J. Heytens, Managing Transitional Moments in Criminal Cases , 115 Yale L.J. 922, 942 (2006).

Christopher N. Lasch, The Future of Teague Retroactivity, or "Redressability," After Danforth v. Minnesota: Why Lower Courts Should Give Retroactive Effect to New Constitutional Rules of Criminal Procedure in Postconviction Proceedings , 46 Am. Crim. L. Rev. 1, 51-54 (2009).

Stovall v. Denno , 388 U.S. 293, 297, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

Linkletter v. Walker , 381 U.S. 618, 636, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965).

See generally Christopher M. Smith, Note, Schriro v. Summerlin: A Fatal Accident of Timing , 54 DePaul L. Rev. 1325 (2005).